UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 02-24-S-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| GERALD VICTOR BOUCHER, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the motion to recuse filed by Defendant/Movant Gerald Victor Boucher.[1] [Record No. 155] Because the motion lacks merit, it will be denied.

## I.      Relevant Facts

Defendant Boucher entered a guilty plea on March 20, 2006, to a conspiracy involving the distribution of 1,000 or more kilograms of marijuana. Because he had a prior felony drug trafficking conviction, he faced a mandatory minimum sentence of twenty years imprisonment.[2]

---

[1]      The motion is not signed by Boucher but, instead, Larry Fassler. Fassler claims to be an "investigator" and asserts that he prepared an accompanying habeas petition at the request of Boucher's wife. The Court will not address at this time whether Fassler has standing to file these pleadings on behalf of Boucher.

[2]      United States Sentencing Guideline ("USSG") § 5G1.1(b) provides that, [w]here the statutorily required minimum sentence is greater that the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." As a result, much of the discussion and argument at the sentencing hearing concerning objections to Boucher's Presentence Investigation Report ("PSR") was unnecessary to properly calculating his guideline range for imprisonment. Because of the mandatory minimum sentence required by 21 U.S.C. §§ 841(b)(1)(A) and 851, his guideline range was 240 months.

Defendant Boucher was able to avoid imposition of a twenty year prison term through cooperation with the government.  At the sentencing hearing held on October 3, 2006, the United States moved for, and the Court granted, a reduction pursuant to USSG 5K1.1 and 21 U.S.C. § 3553(e).  As a result, Boucher was sentenced to a term of imprisonment of 135 months. [Record No. 126]

Larry Fassler claims to have filed the habeas petition under 28 U.S.C. § 2255 on behalf of Boucher on January 12, 2009.[3]  In connection with the petition, Fassler submitted a motion to recuse the undersigned from consideration of his habeas filing. [Record No. 155]  In support of the motion to recuse, he asserts that:

(1)  The undersigned "maintained a personal prejudice" against Boucher, for a reason which is not a valid sentencing factor.  He claims that this "personal prejudice" resulted in the imposition of a sentence which was substantially longer that the sentences imposed on other defendants with greater participation in the crime and with greater criminal histories.[4]

(2)   The undersigned had personal knowledge of misconduct concerning plea negotiations by the Assistant United States Attorney responsible for prosecuting the case.

---

[3]      The record reflects that, on January 28, 2009, United States Magistrate Judge Robert E. Wier entered an order directing Boucher to address whether Fassler meets the requirements for "next friend" standing necessary to act as a § 2255 signatory.  The Defendant is required to respond to the order no later than February 28, 2009. [Record No. 156]

[4]      Boucher was one of three co-defendants indicted in this case.  Co-Defendant Eugene "Moose" Stewart was sentenced on April 3, 2006, to a term of imprisonment of 87 months. [Record No. 98] Stewart was safety valve eligible and, as a result, had a guideline range of imprisonment of 70 to 87 months.  Co-Defendant Larry Golden Jackson, Jr., was  also sentenced on April 3, 2006.  He received a sentence of 188 months of imprisonment. [Record No. 99] Jackson's guideline range was 121 to 151 months of imprisonment.

(3) The undersigned prevented the disclosure of the misconduct of the Assistant United States Attorney by "maintaining a vicious personal and professional attack" upon his attorney.

Although the motion to recuse is not accompanied by an affidavit of the Defendant, the habeas petition sheds some light on the nature of the claims for recusal.  In relevant part, Fassler claims that the alleged personal prejudice was based upon statements made toward the end of the sentencing hearing.  Specifically, the movant states that:

> The Court also made a statement toward the end of the sentencing hearing, as it was pronouncing sentence against the Movant, in which it stated that it was sick and tired of defendants from Arizona "who come to Kentucky" to sell their drugs to the good citizens of the state.  He stated that it was his practice to give such defendants (from Arizona) significantly longer sentences so that "the word will spread" in Arizona that Kentucky is a state to stay away from.  It also stated that it hoped that the longer sentence it was giving to the Movant in this case would help to convince future criminals from Arizona to go elsewhere, and stay out of Kentucky; and that it would continue to hammer defendants from Arizona with long sentences until they learned to stay away from Kentucky.  This statement, which was somewhat harsher and lengthier than it is paraphrased here, does not appear in the official transcript of the sentencing.

[Record No. 154, p. 12][5] In attempting to explain the fact that the transcript of the sentencing

---

[5]    The transcript of the sentencing hearing held on October 3, 2006, contains the following explanation of the application of the factors to be considered under 18 U.S.C. § 3553:

> Now, in making the determination at to the appropriate sentence, the Court looks to Title 18, Section 3553(a), and the Court is instructed to impose a sentence that is sufficient but is not greater than necessary to comply with the statutory purposes.  The Court is also to consider the nature and circumstances of the offense and the history and the characteristics of the defendant.

> Now, in terms of the statutory factors that the Court is to consider, they do include the need for the sentence to reflect the seriousness of the offense; and as I have already indicated, I do consider a conspiracy to bring 1,000 kilograms or more of marijuana into the Eastern District a very serious offense.  The Court does believe that a serious sentence is needed in order to promote respect for the law and to provide for a just punishment.  In addition, the Court has to consider the deterrent effect that the sentence would have on other individuals that are similarly situated.  And finally, the Court has to consider the need to protect the public.

hearing does not contain the statements attributed to the Court, Fassler claims that he was present

---

But for the defendant's advanced age and his medical condition, the Court would be imposing a much higher sentence in order to protect the public and to provide deterrence.

The facts in this case which are undisputed – as it turns out, there are very few facts that were undisputed. But the facts that were undisputed do include a prior criminal conviction for drug trafficking.

The defendant, as Mr. Smith has indicated, has been involved in law enforcement in the past, he certainly knows the effect that his actions would have on the individuals that would receive these vast quantities of drugs that he was involved in bringing to Kentucky.

The Court has to consider, again, the need for any educational or vocational training, and also the need to provide medical care and other corrective treatment. I do believe that the Bureau of Prisons – it should be a recommendation to the Bureau of Prisons that Mr. Boucher serve his period of incarceration at a medical facility that can address his medical needs. And as I stated previously, I do believe that there are several facilities, three at least, that can address the medical needs that have been brought out through the various pleadings in the case.

Now, there are a number of other factors for the Court to consider, one of which is the need to avoid unwarranted sentencing disparities among the defendants with similar records who have been found guilty of similar conduct. There has been a lot of comparison that has been made in the course of this hearing about Mr. Boucher versus Mr. Stewart versus Mr. Sherry versus other individuals that were involved either in this conspiracy or another conspiracy and the sentences that they received. This Court cannot tailor its sentences to what other individuals may have received in other cases in other jurisdictions, because that really brings this to the lowest common denominator. Following that argument to its logical conclusion, if a co-conspirator is convicted in another jurisdiction and that Court believes that under those circumstances the person should receive no period of incarceration, then that would indicate that such a sentence should be imposed in this case.

Obviously, each case has to be determined and each sentence has to be determined based upon its own individual facts and circumstances that are presented. But I have certainly considered those other individuals and the sentences that they received, at least those that I'm aware of.

Now, but for the factors that I have outlined, which do include Mr. Boucher's medical condition and his age and his cooperation, the Court would not hesitate to sentence at the mandatory minimum in this case. But based upon those factors, I will sentence – And I'm going to adopt the recommendation of the United States in terms of the level of the departure, and I am going to consider a three level departure based upon cooperation, and also I have sustained the motion under Title 18, Section 3553(e) that allows the Court to sentence below the mandatory minimum.

[Record No. 145, pp. 148-53]

in the Courtroom on October 3, 2006 and "heard with his own ears" the remarks attributed to the undersigned.

The Defendant's second claim asserting misconduct by the Assistant United States Attorney prosecuting the case appears to concern steps that were taken to lure Boucher, a fugitive, into the Eastern District of Kentucky to obtain his arrest and the parties' subsequent plea negotiations. While the steps taken to secure the arrest of Boucher are unrelated to his sentence, they were discussed at length by the attorneys during the sentencing hearing. [*See* Record No. 145 at pp. 14-17, 106-08, 120-122.] Further, it is clear from the Defendant's plea agreement and discussions held during the rearraignment hearing that Boucher was fully aware of the penalty he faced for his criminal conduct.

The record of the sentencing hearing also contradicts Boucher's assertions that the undersigned engaged in a "vicious personal and professional attack" upon his counsel, Stanton Bloom. Having reviewed the transcript of the sentencing hearing, it is clear that the undersigned allowed Bloom to make numerous, lengthy objections concerning Boucher's PSR. [Record No. 145] While the Court rejected most of Bloom's arguments, it is clear that the undersigned did not engage in an "assault on defense counsel . . . so persistent and pervasive of the sentencing proceedings that it inhibited and prevented defense counsel from fully making his case." [Record No. 154, p. 25] In summary, the transcript of the sentencing hearing held on October 3, 2006, does not provide any objective, factual support for any of the claims made in support of the motion for recusal.

## II.    Analysis

A judge has "as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 659 (10th Cir. 2002).  A judge is presumed to be impartial, and a litigant seeking disqualification bears the burden of alleging facts which would lead a reasonable person to question the neutrality of the judge.  *United States v. Austin*, 2005 U.S. Dist. LEXIS 38303, *5-*6 (W.D. Tenn. Dec. 22, 2005) (citations omitted).

Recusal is governed by two statutes which are to be read *in pari materia*.  Generally, a party moving to recuse a judge relies upon 28 U.S.C. § 144.  However, a judge has an independent duty to recuse under 28 U.S.C. § 455 when the facts warrant recusal.  *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983).  Here, the Defendant's motion to recuse does not cite either of the statutory sections.  Further, the motion is not accompanied by an affidavit of the Defendant as required by 28 U.S.C. § 144.  However, the affidavit of Larry Fassler is attached to the habeas petition as Exhibit A.  [Record No. 154]  Therefore, out of an abundance of caution, the Court will evaluate the motion to recuse under both statutory sections.

Title 28 of the United States Code, Section 455(a) and (b), provides:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in

controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

28 U.S.C. § 455.  The second relevant statute, 28 U.S.C.§ 144, provides that:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. §144.[6]

---

[6]    Although this statutory section would appear to require automatic disqualification once a motion and affidavit are filed, it is proper for the challenged judge to rule on the motion for recusal to determine whether it is legally sufficient.  *See United States v. Washam*, 2007 U.S. Dist. LEXIS 29150 (W.D. Ky. April 17, 2007), and *Marshall v. Yates,* 2007 U.S. Dist. LEXIS 9320, 2007 WL 471166 (W.D. Ky. Feb. 7, 2007).

Under these statutory sections, a district judge is required to recuse himself, "only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983) (quoting *Trotter v. International Longshoremen's Warehousemen's Union*, 704 F.2d 1141, 1144 (9th Cir. 1983); *Reed v. Rhodes*, 179 F.3d 453, 467 (6th Cir. 1999). The standard is an objective one which is not based "on the subjective view of a party." *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988), *cert. denied*, 488 U.S. 1018 (1989).

Recusal is appropriate when a genuine question is presented concerning a judge's impartiality. *Liteky v. United States*, 510 U.S. 540, 552 (1994). However, judicial rulings generally are not a valid reason for recusal. As the Supreme Court explained in *Liteky*,

> judicial rulings almost never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp.*, 384 U.S., at 583, 86 S.Ct., at 1710, . . . Almost invariably, they are proper grounds for appeal, not for recusal . . . [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. . . . *Not* establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds os what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.

*Liteky*, *id.*, at 555-56. Thus, recusal must be based on extrajudicial conduct rather than judicial conduct and upon a personal bias as distinguished from a judicial one, and "upon a personal bias as distinguished from [a] judicial one, arising out of the judge's background and association and

-8-

not from the judge's view of the law." *Green v. Nevers*, 111 F.3d 1295, 1303-04 (6th Cir. 1997). And, as the Court noted in *Liteky*, the required showing of bias cannot be made based solely upon disagreement with a judge's rulings in a case. *Liteky v. United States*, 510 U.S. 540, 555.

Here, with the arguable exception of the allegation that the undersigned is biased against Defendants from Arizona, all other claims are based upon judicial conduct. The Defendant's assertion that his attorney was not allowed to effectively advocate the various objections relating to the PSR is refuted by the transcript of the sentencing hearing. Likewise, his claim of misconduct by the Assistant United States Attorney, allegedly sanctioned by the Court, is not supported by the information provided during the Defendant's sentencing hearing. However, even if these claims had merit, it is clear that they would not constitute a basis for recusal because they are directly related to the Court's rulings regarding objections raised by counsel for Boucher.[7]

---

[7]     As an example, the Court put the Defendant and his attorney on notice at the beginning of the sentencing hearing that acceptance of responsibility might be lost if the Defendant made frivolous objections under USSG § 3E1.1(b).

> THE COURT: . . . Before I review the presentence report and the objections, I believe it is incumbent upon the Court to remind the parties of the provisions of Section 3E1.1 of the Guidelines, Subsection (b). I do note for the record that there are 34 objections that have been made, to which the probation officer has responded, to the presentence report. I will certainly address each and every objection that the parties [wish] to raise in this matter. I will call the parties' attention to the provisions I just referenced, and specifically the sentence that reads – it's Application Note 1(a), "A defendant who falsely denied, or frivolously contests, relevant conduct that the Court determines to be true has acted in a manner inconsistent with acceptance of responsibility and may lose credit for acceptance of responsibility."

[Record No. 145, p. 4] After hearing arguments and testimony on the issues raised, the Court found that Boucher's position at sentencing was inconsistent with information contained in his Plea Agreement. The Court also concluded that Boucher's counsel was less than candid with respect to the basis for sentences given in related cases before other judges as well as the circumstances surrounding the Defendant's arrest. [*See* Record No. 145, pp. 25-35, 118-25.] And while the Court did not apply an upward adjustment for Boucher's

role in the offense due to lack of notice being given, the Court determined that credit for acceptance of responsibility should not be awarded.

As to the objections that have been made that are relevant to the presentence report, the first issue that's of substance involves the adjustment for role in the offense. The presentence report does not indicate that a mitigating role should be applied in this case. This has been argued by counsel for Mr. Boucher. The Court finds that that argument is totally without merit, his argument for a mitigating role reduction. And not only does the Court find that he was not the most – the least culpable in the case, but I do believe that he was either an organizer or a manager or supervisor that in most circumstances would give rise to an aggravating role adjustment under Section 3B1.1 of the Sentencing Guidelines.

Now, obviously, it's understandable that that adjustment was not applied by the Probation Office because the Probation Office did not have access to all the information that has been brought out here in court. But I do believe also that Mr. Smith was certainly obligated to provide the Court with this information through the testimony of Agent Briggs in response to what I consider to be frivolous objections by counsel for the defendant.

Now, with respect to this adjustment, the Court is not going to apply a three- or four-level adjustment to the guideline calculation because of lack of notice. Now the guidelines do require notice be given in advance before that adjustment would be applied, although I can certainly consider this under Section 3553(a) or Title 18 in terms of Mr. Boucher's position in the conspiracy.

**   **   **

. . . but I will state to the parties that based upon the issues that have been raised here today and in written materials that have been submitted, the Court does find that the defendant has falsely denied or frivolously contested his role in the underlying offense in this case by arguing strenuously that he was a minor participant. It boggles my mind to consider – in light of the clear facts and the testimony that's been presented, that – as to why he would take that position in this case and continues with the position that he's taken. The Court will deny the adjustment for acceptance of responsibility in total; will not award either the third-level reduction, which would require a motion by the United States, or the two-level adjustment that would not otherwise be set forth in Section 3E1.1, Subsection (a).

[Record No. 145, pp. 125-26, 129-30]

After the Court announced its rulings concerning the Defendant's objections to the PSR, Mr. Bloom continued to contest these determinations. [Record No. 145, pp. 140-41] This resulted in the following exchange between Mr. Bloom and the undersigned:

MR. BLOOM: . . . So I guess I'm kind of dismayed about what's happened here. I think it's been an attack on me. Your Honor has attacked my credibility, you have made statements to me about the fact that I have been, you know, not honest with the Court, and that's – I mean, I've been practicing 44 years, I've never heard one judge in my whole life ever say that to me.

-10-

Thus, the only extrajudicial basis asserted in support of the motion to recuse is the Defendant's allegation that the undersigned imposed a greater sentence than other defendants typically receive because he is a native of Arizona. However, no objective support has been provided for this assertion. In the present case, Defendant Boucher was facing a mandatory minimum sentence of 240 months but received a sentence of 135 months based on the government's motion under USSG 5K1.1. His co-defendants received sentences of 87 and 188 months of imprisonment respectively which was at the top of the guideline range of one (70 to 87 months) and above the guideline range of the other (121 to 151 months).

Similarly, the Defendant's claims that the Court openly expressed dislike for Arizonians in not supported by the transcript of the sentencing hearing. [Record No. 145]. Further, the assertions of Larry Fassler that he heard the alleged remarks (*i.e.,* that the Court was sick and tired of defendants from Arizona who come to Kentucky to sell their drugs to the good citizens of the state; that it was the practice of the Court to give defendants from Arizona significantly longer sentences so that the word would spread in Arizona that Kentucky is a state to stay away from; that the Court hoped that the long sentence it was giving to Boucher would help convince future criminals from Arizona to go elsewhere and stay out of Kentucky; and that it would continue to "hammer" defendants from Arizona with long sentences until they learned to stay from Kentucky) which do not appear anywhere in the transcript, is not the type of objective

---

THE COURT: Well, you've heard it now.

-11-

evidence that a reasonable person would consider in questioning a district judge's impartiality. *Reed v. Rhodes*, 179 F.3d at 467. "Conclusions, rumors, beliefs, and opinions are not sufficient to form a basis for disqualification." *General Aviation v. Cessna Aircraft Co.,* 915 F.2d 1038, 1043 (6th Cir. 1990) (quoting *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987)(citations omitted)). In short, while actual statements in court transcripts would be objective evidence that a reasonable person could consider, phantom statements are insufficient to meet the Defendant's burden. *See also Silverburg v. United States*, 2007 U.S.Dist. LEXIS 25664 (W.D.Ky., April 4, 2007) (denying motion to recuse supported by an affidavit alleging racial and personal bias). As the Court noted in *Silverburg*, even if an affidavit accompanies a motion to recuse, the affidavit must contain more than conclusions and accusations. It must contain facts which a *reasonable* person would find sufficient to question the judge's impartiality.

Although Boucher has not filed an affidavit as required by 28 U.S.C. § 144, it is clear that the allegations contained in the affidavit of Fassler are contradicted by the transcript of the October 3, 2006 sentencing hearing. A reasonable person simply would not find it plausible that the Court reporter failed to record the lengthy, detailed statements that Fassler claimed were made in open court or that she conspired at the time the transcript was filed (May 11, 2007) to omit language that Boucher would seek to rely upon in a habeas petition filed nearly twenty months later.

### III.    Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED** that the Defendant's motion [Record No. 155] is **DENIED**.

-12-

This 5th day of February, 2009.



Signed By:

*Danny C. Reeves*

**United States District Judge**